IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHAD EASTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-CV-4039-JPG |
| ) | |
| CONTINENTAL TIRE NORTH ) | |
| AMERICA, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter comes before the Court on defendant Continental Tire North America, Inc.'s ("CTNA") Motion for Summary Judgment (Doc. 17). CTNA submitted a memorandum of law in support of its motion (Doc. 21), to which Plaintiff Chad Easton ("Easton") has responded (Docs. 20, 23), and CTNA has replied (Doc. 24). For the following reasons, CTNA's motion will be **GRANTED**.

## BACKGROUND

Easton filed his complaint in this matter on March 10, 2005, alleging violations of the Uniform Services Employment and Re-Employment Act, 38 U.S.C. § 4301, *et seq.* ("USERRA"). Specifically, Easton claims defendant CTNA denied him employment at its factory in Mt. Vernon, Illinois, due to his membership in the Army National Guard (Doc. 1 at 2). In its motion for summary judgment, CTNA included a detailed recitation of the facts of this case. In stark contrast to CTNA's attention to detail, Easton's response and memorandum of law are woefully inadequate. Though length does not necessarily correspond to merit, Easton's one-page memorandum of law (attached

to his half-page motion) calls out for reproach. Among many deficiencies, Easton failed to include a statement of facts in his brief. Nevertheless, he urges the Court to deny CTNA's motion for summary judgment, based on one fact: that one of his interviewers allegedly told him that he could not work for CTNA because he was in the National Guard. (Doc. 20 at 1). In support of this allegation, Easton cites to pages 55-71 of his deposition transcript, which he attached as the only exhibit to his memorandum. He makes no more specific citation than his general reference to the 17 pages he attached. Essentially, he would have the Court draw his arguments for him based on its reading of his testimony. This is something that the Court need not do. *United States v. McLee*, 436 F.3d 751, 760 (7th Cir. 2006) ("[I]t is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.") (citation omitted). *See also Spath v. Hayes Wheels Intern.-Indiana, Inc.*, 211 F.3d 392, 397 (7th Cir. 2000). Easton cites to one case in his brief (once) – without a pinpoint citation – for a proposition of law that is antithetical to the holding of the case.[1] In short, his brief is so shockingly deficient it is almost contemptuous. As a result of his failure meaningfully to develop any arguments and to cite to the record in any helpful way, the Court finds that he has waived the one argument he half-heartedly attempted to make in his brief. *See Spath*, 211 F.3d at 397. This waiver does not dispose of the case, however, because CTNA must still meet its burden of demonstrating that there is no

---

[1] In his brief, Easton claims that a statement made by a CTNA employee interviewing him is sufficient to create a genuine issue of material fact sufficient to defeat CTNA's summary judgment motion. He goes on to state that this would be true even if CTNA could come forward with a valid reason for not hiring him, citing *Sheehan v. Department of Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001). However, in that case, the court said the opposite; specifically, it held that if a plaintiff meets his burden of establishing that his military status was a motivating factor in the adverse employment action, the employer has the opportunity "to come forward with evidence to show, by a preponderance of the evidence, that the employer would have taken the adverse action anyway, for a valid reason." *Id*. at 1013.

issue of material fact precluding summary judgment.

CTNA's brief sets forth the following uncontradicted facts. When Easton applied for a position with CTNA he was a member of the National Guard, and a former soldier in the Army. Thus, his status as one deserving of protection under USERRA is not disputed. CTNA operates a manufacturing facility in Mt. Vernon, Illinois, which employees approximately 2,000 people. This plant is not air-conditioned, is operated twenty-four hours a day and is staffed by employees working in five separate shifts. Because the work at the plant is physically demanding and the conditions difficult, CTNA utilizes a temporary worker program to screen potential employees before hiring them itself. CFA is a temporary agency that implements its temporary worker program. CTNA directs CFA to hire a certain employee after CTNA staff members interview candidates who apply through CFA. Once hired, the temporary workers are employees of CFA, are paid $10 an hour and do not receive benefits. To give these workers a taste of the conditions of a job at the plant, they typically work four shifts a week: two eight-hour shifts during the week and two twelve-hour shifts on the weekend. Don Gass ("Gass") and various other CTNA representatives interview candidates before directing the hiring decision by CFA. Once CTNA accepts such a worker, he becomes eligible for employment with CTNA after six months. Importantly, all temporary workers that CTNA has accepted from CFA since beginning its relationship with that company in 2005 have had experience in manufacturing or in the plant setting.

Easton filled out an application with CFA on January 18, 2005 (Doc. 18 ex. A). On his application Easton indicated his previous work experience and affiliations with the military. Importantly, from CTNA's perspective, Easton failed to list any skills he possessed relevant to his possible employment with CTNA. After Easton completed a skills test and other documents with

CFA, CTNA scheduled him for an interview with Gass and Curt Hoelscher ("Hoelscher"), another CTNA representative, on February 3, 2005. Easton was one of the fifteen candidates interviewed that day. At the beginning of Easton's interview, Gass asked Easton to tell him a little bit about himself. In response, Easton spoke of his educational background, his time in the Army, and his membership in the National Guard. When asked to describe his duties with the Guard, Easton told Gass and Hoelscher of his commitment: one weekend a month and two weeks a year.[2] After other perfunctory questions, Gass questioned Easton once again about his obligations to the Guard and whether he could receive time off to work the weekend shifts required of temporary employees. In response, Easton said that he would have to check with his commander. During the interview, Gass and Hoelscher also asked Easton about his employment history and went over his job application with him. According to Gass, he recognized during the interview that Easton did not have the qualities CTNA looks for in temporary workers. Gass based this impression on the facts that Easton had never held a manufacturing position, had no skills relevant to the position and had only worked in air-conditioned environments recently. At the end of the interview, Gass told Easton that he did not believe he (Easton) was right for the position. Sometime after Gass and Hoelscher conducted their interview with Easton, they informed CFA that CTNA had decided not to accept Easton for temporary assignment. On February 9, 2006, a representative from CTNA contacted Easton and told him that CTNA had not selected him for the position.

On the same day Gass and Hoelscher interviewed Easton, Gass and another CTNA representative, Greg Martinez, interviewed Daniel Pearl ("Pearl"). Pearl was a member of the U.S.

---

[2] Some of the specifics of the conversation that followed are disputed. Thus, for purposes of this motion the Court will take as true Easton's version of the disputed events.

Army National Guard Reserve and as such had a commitment to perform various duties for the Reserve one weekend a month.  While in the military, Pearl worked as a tank mechanic where he did equipment repair on heavy machinery and general preventative maintenance.  If hired, this experience would have proven relevant to the positions filled by temporary workers at CTNA.  In contradistinction to Easton, Pearl completed the "skills" section of his CFA application, where he indicated his experience in assembly, quality control and electrical work, among other things.  During this interview, Gass told Pearl how he had served in the military, his dedication to the military and that his sons had served in the military as well.  As a result of his employment skills and apparent disposition, CTNA decided to accept Pearl as a temporary employee.  During this probationary period, CTNA allowed Pearl to meet his military responsibilities by not scheduling him for shifts on the weekend he was committed to the Reserve.

CTNA has accepted a number of Guard members as temporary workers on Gass's recommendation.  On February 15, 2005, it accepted Daniel Hood; on May 25, 2005, it accepted Jeremy Childers and on April 19, 2005, it accepted Anthony May.  CTNA allowed all of these individuals to miss work to meet their Guard obligations. Recognizing CTNA's commitment to the U.S. Army, Francis J. Harvey, Secretary of the Army, sent CTNA a letter acknowledging it "as a vital member of the Army team."  (Doc. 18, ex. G).  Additionally, CTNA currently has four employees on active duty (all hired before 2004) currently on leave pursuant to USERRA.  These individuals are Tyrone Jones, Jason Berry, Jackie J. Phelps and Jim Zelasko.  The following seven employees worked for CTNA while in the Reserve or Guard and took leave pursuant to USERRA: John Stanhouse, Ben Patterson, Brian Gibson, Wayne Talley, Kirby Matheny, Larry Adcock and William Doerr.

## ANALYSIS

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). In determining whether a genuine issue of material fact exists, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath*, 211 F.3d at 396. The moving party has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. If it meets this burden, the nonmoving party must set forth facts that demonstrate the existence of a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247; *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005), or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252; *Insolia v. Phillip Morris Inc.*, 216 F.3d 596 (7th Cir. 2000).

Congress enacted USERRA to, among other things, "encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service . . . [and] to prohibit discrimination against persons

because of their service in the uniformed services." 38 U.S.C. § 4301(a)(1), (3). To facilitate this goal, USERRA prohibits employers from denying initial employment to servicemen based on membership in a uniformed service. 38 U.S.C. § 4311(a). An employer engages in prohibited discrimination under § (a) if the potential employee's membership in the uniform services "is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership . . . ." 38 U.S.C. § 4311(c)(1). The standard of proof in a discrimination claim under USERRA is the "but-for" test utilized in cases under the National Labor Relations Act. *Sheehan v. Department of Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001); *see also Coffman v. Chugach Support Servs., Inc.*, 411 F.3d 1231, 1238 (11th Cir. 2005); *Gummo v. Village of Depew, N.Y.*, 75 F.3d 98, 106 (2d Cir. 1996). In USERRA cases, courts have adopted the evidentiary scheme set forth by the Supreme Court in *National Labor Relations Bd. v. Transportation Management Corp.*, 462 U.S. 393, 401 (1983). *Sheehan*, 240 F.3d at 1013 (noting the modification of the holding in *Transportation Management* by *Director, Office of Workers' Compensation v. Greenwich Collieries*, 512 U.S. 267 (1994)). Under this standard, an employee bears the initial burden of showing by a preponderance of the evidence that an employee's military service was "a substantial or motivating factor" in the adverse employment action. *Id*. (citing *Transportation Management*, 462 U.S. at 400-01); *Coffman*, 411 F.3d at 1238. The employee's status need not be the sole cause of the employment action, so long as it is "one of the factors that a truthful employer would list if asked for the reasons for its decision." *Coffman*, 411 F.3d at 1238 (internal citations and quotations omitted). If the employee meets this initial burden, the burden shifts to the employer to show, by a preponderance of the evidence, that the employer would have taken the action anyway for a valid reason. *Sheehan*, 240 F.3d at 1013; *Coffman*, 411 F.3d at 1238-

39. The factual question on the issue of discriminatory intent may be answered by resorting to both direct and circumstantial evidence. *Sheehan*, 240 F.3d at 1014. Factors to consider in making this determination include the

> proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.

*Id.*[3] In analyzing these factors, a court should look at all record evidence including the employer's explanation for its actions. *Id*.

As the Court will discuss, CTNA has shown that there is no disputed issue of material fact and that it is entitled to judgment as a matter of law. Before discussing CTNA's arguments, it is necessary to have an understanding of Easton's allegations in the complaint and the argument he attempted to make in his response to CTNA's motion for summary judgment. Apparently, Easton would prove Gass's discriminatory intent by introducing Gass's alleged statements during Easton's interview. In his complaint, Easton claims Gass told him CTNA could not employ him due to his membership in the Guard; this is also the sole argument he made in his response. He offers no evidence in support of this assertion. As the Court previously stated, Easton only cites generally to 17 pages of his deposition testimony for this proposition. After reviewing the testimony, the Court concludes that it does not disclose direct evidence of prohibited discrimination. At his deposition, Easton detailed the events that took place when Gass interviewed him. In response to Gass's

---

[3] It is important to note that the procedural framework in these cases is different from that in Title VII cases under the *McDonnell Douglas* framework. *Sheehan*, 240 F.3d at 1014.

questions, Easton detailed his commitment to the Guard. According to Easton, Gass asked him "how [Easton] would be able to be let off of the National Guard to fulfill my employment with the General Tire." (Doc. 20 at 14). "[H]e said that [Easton's] employment with this facility would not allow for [me] to have that time off to go to National Guard and how would that work, and I stated to him that I could ask my commander for time off because he stated to me that the shifts were 12-hour shifts." When counsel for CTNA asked for Gass's specific words, Easton replied "[Gass] said I don't know how being in the – how working here – or how being in the National Guard will work out as a condition of your employment as far as being able to get off and missing days because we don't like to – when you're on probation, you're not allowed to miss a day." (*Id*. at 15). At the end of the interview, Gass told Easton "that we don't know that you'll be right for this position." (*Id*. at 17). Apparently, Easton would offer his version of events as direct evidence of the fact that his military status was a motivating factor in CTNA's decision not to hire him. These statements are not direct evidence. According to Easton, Gass told him at the end of the interview that he did not believe Easton right for the position; however, he did not elaborate further. As a subsequent inferential step is required to connect Gass's alleged statements about Easton's Guard service to his decision not to offer Easton the position, this is actually circumstantial evidence. As Easton has failed to make any arguments regarding this evidence along the lines suggested in *Sheehan*, he has not shown, and as the Court will discuss, cannot show on the record before the Court, that his Guard membership was a motivating factor in CTNA's decision not to hire him.

CTNA has addressed each of the factors set forth in *Sheehan* and its arguments have convinced the Court that there is no genuine issue of material fact as to the reasons for its decision not to hire Easton. Simply put, the record could not lead a reasonable juror to find for Easton. *See*

*Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992).  The first factor to consider is the proximity in time between Easton's military activity and CTNA's decision not to offer him the adverse employment action.  According to Easton's version of events, Gass told him he was not right for the position at the end of his interview.  Both parties agree that Gass and Easton discussed Easton's work, military and educational history during the interview.  Easton has not denied that he did not list any skills relevant to a position with CTNA on his application, or that he had no skills CTNA looks for in temporary workers.  Because Gass and Easton discussed various topics during the interview, the timing of Gass's decision not to hire him does not necessarily indicate that his alleged comments regarding Easton's commitment to the Guard showed that Easton's Guard membership was a motivating factor in the decision.  However, given the lens through which the Court must view Easton's allegations in a motion for summary judgment, one might infer the prohibited discriminatory animus from Gass's statements.  The Court need not address the reasonableness of the inference from the statements themselves, because the inference becomes decidedly unreasonable when Gass's statements are viewed in conjunction with the uncontradicted facts considered below.

      The second factor for consideration under *Sheehan* is whether there are inconsistencies between the proffered reason for the adverse decision and the other actions of the employer.  Here, Easton has offered no evidence to contradict CTNA's claims regarding the other temporary workers hired by CFA.  All of these workers had some experience in manufacturing and plant work.  Further, Easton has produced no evidence which shows that he had any experience relevant to any potential work he might have done at the plant.  He did not indicate any skills he felt relevant to CTNA's hiring decision in his employment application and did not divulge any relevant skills in his

interview. His lack of experience (the proffered reason) and CTNA's subsequent actions are not inconsistent. Importantly, on the same day Gass interviewed Easton, he also interviewed Pearl, a military man with commitments similar to Easton's. Gass directed CFA to hire Pearl despite his membership in the Guard Reserve. On his employment application, Pearl listed a number of skills relevant to the position. Gass discussed these skills in Pearl's interview. That Pearl, another Guard member with more experience, was hired on that same day supports Gass's stated reasons for not hiring Easton – his lack of experience. If Gass did not hire Easton because of his Guard membership, it would defy reason that he would hire another Guard member with similar commitments in his stead. Furthermore, CTNA's hiring of three additional members of the Guard, Hood, Childers and May, supports CTNA's version of events. CTNA allowed all of these workers to miss work to meet their obligations with the Guard. The uncontroverted facts establish that CTNA hired a member of the Guard Reserve for the specific position Easton claims CTNA failed to hire him due to his own Guard service. Not only did it hire Pearl, but it subsequently hired three other members of the Guard and allowed them time off to complete their Guard obligations. There is no inconsistency between CTNA's proffered reason and its subsequent actions.

     The third factor set out in *Sheehan* is an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity. As detailed above, there is no record of expressed hostility by CTNA towards those in the military. Not only did CTNA hire another Guard member instead of Easton and hire three other Guard members after Easton, it has four employees currently on military leave and employs seven other individuals who worked for CTNA while in the Guard or Reserve. Further, the Army has commended CTNA for its commitment to working with the military. Even if the Court accepts Easton's deposition

testimony in full, he did not indicate during his deposition that Gass made any disparaging remarks about the military. In his affidavit, Gass provides an uncontradicted account of how he told Easton of his own military service, of his sons' military service and his dedication to the military in general. When these facts are taken together with the fact that CTNA hired Pearl for the position for which Easton interviewed, there is simply nothing to support any expressed or implied hostility on CTNA's or Gass's behalf with respect to the military.

      The final factor for consideration under *Sheehan* is whether CTNA treated Easton differently than others similarly situated. Easton has failed to produce any evidence whatsoever with regard to CTNA's treatment of similarly situated individuals. Overall, the evidence presented to this Court suggests that CTNA and Gass did not discriminate against Easton. At the most basic level, it is hard to give credence to an inference of CTNA's discrimination against those in the military when its personnel manager is a former military man himself (who, it must be noted, passed the tradition on to his sons) and when the individual hired instead of Easton was a member of the Guard Reserve. Additionally, Easton does not dispute that he lacked the experience to be hired by CFA and he has not contradicted CTNA's assertions that it only directs CFA to hire those with experience. On this analysis alone, CTNA is entitled to summary judgment.

      Assuming Easton had met his burden of showing that his Guard membership was a motivating factor in CTNA's refusal to offer him a job, CTNA would be entitled to show that it would have taken the action anyway for a valid reason. *Sheehan*, 240 F.3d at 1013. CTNA has come forward with evidence to establish that it would not have hired Easton anyway, because of his lack of experience or relevant skills. As previously discussed, Easton did not list any skills on his employment application and presented nothing in his interview indicating he possessed the type of

experience CTNA looks for in its temporary workers. CTNA has satisfied its burden, by more than a mere preponderance. The vast majority of the evidence presented to the Court shows that Easton did not possess the skills CTNA requires of its temporary workers.

## CONCLUSION

Defendant's motion for summary judgment is (Doc. 17) is **GRANTED**. Easton's claims against CTNA in this case are hereby **DISMISSED WITH PREJUDICE**. The **Clerk of Court** is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**Dated: April 17, 2006.**

                                             /s/ J. Phil Gilbert  
                                             **J. PHIL GILBERT**  
                                             **U.S. District Judge**